UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEN BONAVENTURA,<br><br>    *Plaintiff,*<br><br>v.<br><br>GEAR FITNESS ONE NY PLAZA LLC,<br>GEAR FITNESS HOLDINGS LLC,<br>RETROFITNESS, LLC,<br>MEDISPA ONE NY PLAZA LLC and<br>RICHARD SANSARICQ,<br><br>    *Defendants.* | Civil Action No. _____<br><br>**COMPLAINT**<br><br>(Demand for Trial by Jury)<br><br>(**ECF**) |

Plaintiff Ben Bonaventura, by his undersigned attorneys Schwartz & Thomashower LLP, for his Complaint against Defendants, alleges as follows:

## NATURE OF ACTION

1. This action arises from Defendants' willful failure to comply with their statutory and contractual obligations to Mr. Bonaventura and their retaliatory termination of his employment.

2. Mr. Bonaventura is a highly accredited personal trainer who worked for Defendants from July 2014 through June 2016, often in excess of a hundred hours a week. For nearly nine of the twenty three months that Defendants employed Mr. Bonaventura, they failed to pay him at all. During the remainder of his employment, Defendants failed to pay Mr. Bonaventura in accordance with their written agreement. In direct response to Mr. Bonaventura's repeated complaints about their willful violations and breached agreements, Defendants fired him.

3. Mr. Bonaventura now seeks damages and other legal and equitable relief arising from Defendants' underpayment of and failure to pay him wages in violation of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and New York Labor Law ("NYLL") § 190 et seq. Plaintiff also asserts claims and seeks damages for breach of his employment contract, unjust enrichment, *quantum meruit,* promissory estoppel, and for physical and emotional injuries, including extreme emotional distress, resulting from the foregoing. In addition, Plaintiff seeks damages and other relief for Defendants' retaliatory termination and other conduct in violation of Federal and State law. *See* 29 U.S.C. § 215 and NYLL § 215.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction pursuant to 28 U.S.C. §1331 because this action arises under the FLSA, as amended, 29 U.S.C. § 201, et. seq. This Court has supplemental jurisdiction of the claims arising under New York State law pursuant to 28 U.S.C. § 1367(a) because the New York State law claims are so related to Plaintiff's FLSA claims that they form the same case or controversy under Article III of the United States Constitution.

5.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the unlawful conduct complained of herein occurred, and Defendants regularly do business, within the Southern District of New York.

## PARTIES

6.  Plaintiff Ben Bonaventura ("Plaintiff" or "Mr. Bonaventura") is, and at all relevant times was, a resident and citizen of the State of New York.

7.  Defendant Gear Fitness One NY Plaza LLC ("Gear Fitness") is, and at all relevant times was, a limited liability company organized under the laws of the State of New York. Upon information and belief, Gear Fitness is wholly owned by Defendant Richard Sansaricq and, upon information and belief, is a franchised licensee of Defendant Retrofitness, LLC, and of affiliated Retrofitness Entity. Gear Fitness operates a gym and fitness club with its principal place of

2

business in this District at One NY Plaza, New York New York 10004, doing business under the trademark RETRO FITNESS ("Retro Fitness Manhattan"). Gear Fitness also originally owned and operated The MediSpa ("The MediSpa"), which, at all relevant times, offered massage, physical therapy, acupuncture, chiropractic care and nutrition based services in the same location as Retro Fitness Manhattan. In or about December 2015, Gear Fitness, at Mr. Sansaricq's direction, transferred the ownership of The MediSpa to Defendant MediSpa One NY Plaza LLC ("MediSpa"), which, upon information and belief, Mr. Sansaricq also owns and controls (Retro Fitness Manhattan and The MediSpa are sometimes hereinafter referred to as "the Gym").

8. Defendant Gear Fitness Holdings LLC ("Gear Fitness Holdings") is, and at all relevant times was, a limited liability company organized under the laws of the State of New York. Upon information and belief, Gear Fitness Holdings is wholly owned by Defendant Richard Sansaricq and is affiliated with Defendant Gear Fitness, MediSpa, and Retrofitness, LLC.

9. MediSpa One NY Plaza LLC, is, and at all relevant times was, a limited liability company organized under the law of the state of New York. As noted, upon information and belief, MediSpa is wholly owned by Defendant Richard Sansaricq, and is affiliated with Defendants Gear Fitness, Gear Fitness Holdings, and Retrofitness, LLC.

10. Retrofitness, LLC ("RFL" or "Retro Corporate"), is, and at all relevant times was, a limited liability company organized under the laws of the State of Delaware, with offices at 43 County Road, 537 West Colts Neck, New Jersey 07722. Upon information and belief, RFL was founded in 2002 doing business under the brand name "Retro Fitness" and does business through and licenses a national fitness system with more than 140 gyms and fitness clubs providing instruction and equipment for physical exercise and fitness in 16 states, including at least 39

3

gyms operating in the State of New York. RFL is doing and transacting business in this District. RFL entered into a franchise agreement with Defendant Richard Sansaricq for the Retro Fitness Manhattan gym and related facilities.

11. Upon information and belief, Defendant, Richard Sansaricq ("Sansaricq ") is, and at all times was, the owner and an officer and employee of Gear Fitness, Gear Fitness Holdings and MediSpa.

12. Defendant Sansaricq at all relevant times had direct control over the operations of Defendants Gear Fitness, Gear Fitness Holdings, MediSpa, and the Gym.

13. Sansaricq's actions and decisions directly affected the terms and conditions of Plaintiff's employment. For example, Sansaricq made the decision in conjunction with Retro Corporate, to hire and fire Plaintiff, among others, which decision was subject to the approval of, and was approved by, the other Defendants as joint employers. In addition, Sansaricq also in conjunction with Retro Corporate and others supervised Plaintiff's daily activities, set his compensation, and took specific actions adverse to Plaintiff's employment and payment of wages and compensation, including, but not limited to, the failure to pay Plaintiff wages and overtime, the withholding of his wages, and the failure to provide required wage notices and statements.

14. Defendants were at all relevant times "covered employers" under the FLSA since they are engaged in activities related to interstate commerce for a common business purpose. Upon information and belief, the amount of qualifying annual volume of business for each of the respective Defendants exceeds $500,000 and thus subjects Defendants to the FLSA's overtime requirements. Additionally, Defendants are engaged in interstate commerce, which independently subjects Defendants to the FLSA's overtime requirements.

15. Defendants were at all relevant times an "employer" of the Plaintiff as defined in 29 U.S.C. §203(d) and NYLL § 190(3), and Plaintiff was an "employee" of Defendants as defined in 29 U.S.C. §203(e)(1) and NYLL § 190(3).

16. Defendants are covered employers under NYLL § 651 because, *inter alia,* Defendants are an organized group acting as employers.

17. Defendants are joint and co-employers of Plaintiff pursuant to the FLSA and NYLL and are therefore jointly and severally liable for the wrongs complained of herein and the damages Plaintiff has suffered.

## FACTUAL ALLEGATIONS

18. Upon information and belief, since in or about 2004, Retro Corporate has been the operator and franchisor of an expanding national fitness system and currently has and receives income from the operations of 140 gyms and fitness clubs in 16 states. Retro Corporate is expanding and has more than 100 gyms in development in various states. Its operations and business plans include full-service fitness centers, each including 60-100 pieces of exercise equipment. Retro Corporate claims that it is a "burgeoning franchise. ... placed in the top 300 of Entrepreneur's magazine prestigious Franchise 500 list for five consecutive years." Retro Corporate actively recruits individuals to learn, follow and operate its fitness center model which it touts as "not just a gym" and as a "Profit With Pride model for our club owners."

19. Upon information and belief, in or about February 2013, Defendant Sansaricq entered into a franchise and trademark license agreement with RFL to construct and open a new gym and fitness club with a medical spa at a location which was eventually determined to be One NY Plaza. Upon information and belief, this was a major project designed to obtain lucrative fitness club memberships from successful professionals and others living and working in

Manhattan's financial district. For example, AIG, Morgan Stanley, and Revlon, and other large companies are located in the same building. This premier location created a profitable marketing opportunity for new clientele among the myriad local professionals looking to maximize time management with a gym located in close proximity to their workplace.

20. Upon information and belief, Retro Corporate selected the location, the architect and the design team, and was also substantially involved, along with the other then existing Defendants, in the construction, marketing and operations of Retro Fitness Manhattan. Upon information and belief, Retro Corporate was also directly and actively involved in Retro Fitness Manhattan's day-to-day operations, including in employee selection, compensation determination, and audits of the operations with requirements of regular written reports and maintenance of the Retro Fitness brand standards.

21. In or about May or June 2014, Sansaricq and Plaintiff began discussing the position of General Manager and Director of Physical Therapy and Personal Training of Retro Fitness Manhattan and the MediSpa. The initial discussions progressed favorably, and shortly thereafter, Sansaricq and Retro Corporate executives interviewed Plaintiff for that position on July 11, 2014. Plaintiff was subsequently hired for the General Manager Position immediately thereafter. Upon information and belief, all of the Defendants in existence at the time were involved in the decision to employ Plaintiff as the Gym's General Manager and Director of Physical Therapy and Personal Training.

22. When Defendants hired him in July 2014, Mr. Bonaventura had substantial experience as a gym and fitness club manager and certified personal trainer. Having been a certified personal trainer for over 17 years, Mr. Bonaventura had, and has, certifications from major accrediting organizations including the American College of Sports Medicine (ACSM),

the National Strength and Conditioning Association (NSCA), and the International Sports Science Association ("ISSA"). Plaintiff is also certified for CPR first aid and in the use of automated external defibrillator.

23. At or about the time he was hired, Plaintiff was provided with a copy of a "employee handbook," and was expressly advised that the handbook contained Retro Corporate's policies and procedures, all of which he was told governed the terms and conditions of employment at Retro Fitness Manhattan. Plaintiff was also expressly directed to comply with Retro Corporate's policies and procedures during his tenure as a Retro Fitness Manhattan employee. In addition, at or about the time the Gym opened for business, executives from Retro Corporate conducted a three day training at the Gym to review Retro Corporate's policies and procedures, Retro Corporate's dress codes, and other Retro Corporate terms and conditions of employment at Retro Fitness Manhattan.

24. The terms of Plaintiff's employment were formally memorialized in Defendant Sansaricq's July 21, 2014 letter (the "Employment Agreement"). The Employment Agreement stated in relevant part:

> We are pleased to offer you employment at Retro Fitness of Manhattan, NY and are excited about your interest in the position. We feel that your skills and background will be valuable assets to our team.
>
> Per our discussions and other communications, the position is General Manager and Director of Physical Therapy and Personal Training. You will report to Richard Sansaricq. Your start date is to be determined but will be at the opening of Retro Fitness Manhattan. The Starting Salary is $1923.08 per week or $100,000 per year and is paid on a bi-weekly basis.

The letter had additional "incentives and bonus package" terms. A copy of the Employment Agreement is annexed hereto as Exhibit A.

25. Plaintiff accepted the offer and signed the Employment Agreement on or about July 28, 2014 and returned it to Defendant Sansaricq. The Employment Agreement did not address Plaintiff's compensation or other benefits for any work Plaintiff performed prior to the Gym's opening.

26. The Gym was originally scheduled to open in or about October 2014. Due to numerous construction, design related and financial issues, the Gym did not open until March 5, 2015, although The MediSpa was not fully operational until September 2015. Thus, although the "start date" as provided in the Employment Agreement was to be "at the opening of Retro Fitness Manhattan," Defendants required Plaintiff to supervise and take responsibility for significant aspects of planning, constructing and outfitting both the new gym facility and The MediSpa and perform numerous other tasks prior to opening. For example, during the nine month period before Retro Fitness Manhattan opened, Plaintiff was involved with Defendant Sansaricq and Retro Corporate executives, including Matthew Schultz, Vice President of Franchise Operations, in all the planning stages for the newly constructed gym and The MediSpa. This included redesigning the physical layout of Retro Fitness Manhattan and overseeing or arranging revisions and corrections to work done by others, including architectural plans, the building and ventilation installation by the lessor of the premises and the interior design construction company. Plaintiff also designed layout for functional training areas, worked on preparation and implementation for group exercise classes, and interviewing and, subject to Defendant Sansaricq's approval, hiring other personal trainers. In addition, at Defendants' request and with their approval, Plaintiff attended and supervised site visits, coordinated with the architects charged with designing the new facility and acted as a liaison between the architects, the lessor and the interior construction company. Plaintiff also expended

substantial efforts designing and creating a number of special features for Retro Fitness Manhattan, sometimes at his own cost and expense.

27. Accordingly, commencing as early as July 2014 and continuing until the new Retro Fitness Manhattan gym opened in March 2015, Plaintiff, at Defendants' direction and with their approval, performed nine months of intensive and time-consuming labor on multiple and wide-ranging tasks to bring Retro Fitness Manhattan to fruition as an operating fitness gym under the RETRO FITNESS brand and to open The MediSpa. Throughout these nine months Plaintiff was not compensated for any of his time or labors.

28. At the time he was hired, Plaintiff was not provided with any of the necessary hiring and employment records including W2 employment Forms, W4 Employment Forms, Pay Rate Acknowledgment Forms, or Wage Verification Forms purporting to provide the information required under the New York State Wage Theft Prevention Act ("WTPA").

29. Likewise, Defendants failed to keep any records with respect to Plaintiff's employment for the period June 2014 through March 5, 2015, and failed to provide Plaintiff with any written statements concerning the number of hours he worked per week.

30. In addition, Plaintiff had to expend his own funds to perform many of his numerous tasks, and to purchase business supplies and equipment, and often was not reimbursed by Defendants. As of June 2016, when Defendants wrongfully terminated Plaintiffs' employment, he had expended over $58,000 of his personal funds for purchases of equipment and materials for Retro Fitness Manhattan, none of which has not been reimbursed to Plaintiff, notwithstanding Gear Fitness, MediSpa and Sansaricq's agreement to do so.

31. Commencing as early as July 2014 and continuing through Defendants' wrongful termination of his employment, Plaintiff regularly worked more than 40 hours a week, and often

9

in excess of 100 hours a week. At no time did Defendants pay overtime wages to Plaintiff, and for the period prior to the March 2015 opening of the Gym, Plaintiff received no pay whatsoever.

32. Plaintiff also traveled in connection with his work for Defendants. Defendants did not pay Plaintiff additional compensation for the extra hours that he worked due to work related travel.

33. In or about September 30, 2015, Defendants began to withhold Plaintiff's wages, claiming that that the company did not have sufficient funds to pay him his full salary.

34. On several occasions after the Gym opened, Plaintiff complained to Defendant Sansaricq about Defendants' failure to compensate him the full amount of his owed wages. Plaintiff further complained that he was working too many hours, doing tasks for which he had not been hired and for which he was not being compensated. Defendants failed to respond to or resolve Plaintiff's complaints.

35. Plaintiff also complained to Defendant Sansaricq that the ventilation system installed in Retro Fitness Manhattan was inadequate, was not compliant with NYC Building Code standards, and had adversely affected the health and safety of the Gym's occupants, including its employees and paying members. Although the installed HVAC equipment was insufficient for the size of the space, Defendant Sansaricq instructed Plaintiff to fix it himself, which he endeavored to do by covering cracks and crevices and using tape to seal gaps in the system. Sansaricq then paid a third party vendor to certify falsely that the HVAC was in compliance with applicable laws, even though the air quality did not meet minimum standards and was not in compliance.

36. During his employment, Plaintiff's long hours caused him to suffer physical pain and emotional anguish. The physical symptoms included, but were not limited to, elevated blood

pressure and migraines due to stress, bleeding ulcers, physical tension, and anxiety related insomnia.

## TERMINATION

37. On June 2, 2016, Defendants terminated Plaintiff's employment in retaliation for his complaints, including those relating to public health and welfare and failures to pay Plaintiff in violation of labor laws or to provide promised health insurance.

## FIRST CLAIM
### (Failure to pay minimum wages and overtime under the FLSA)

38. Plaintiff repeats paragraphs 1 through 37 inclusive, of this Complaint.

39. During the initial period of Plaintiff's employment from July 2014 through March 5, 2015, Defendants willfully, knowingly and intentionally failed to pay Plaintiff any wages for the work and labor he performed at Defendants' request and with their approval. Likewise, Defendants failed to pay Plaintiff any overtime for the hours he worked in excess of 40 hours a week.

40. In addition, starting in or about in September 2015 and continuing until he was wrongfully terminated, Defendants withheld nearly fifty percent (50%) of Plaintiff's contractually agreed to wages from his bi-weekly paycheck. Therefore, to the extent Defendants assert that Plaintiff became a salaried employee in March 2015, exempt from the FLSA's overtime requirements, any such exemption from the FLSA's overtime requirements was lost by reason Defendants' failure to pay Plaintiff his agreed upon wages.

41. Upon information and belief, Defendants were responsible for or knew of, or showed reckless disregard for, the practices by which Plaintiff was not paid a minimum wage for work prior to March 2015, and not paid at the proper overtime rate for all of the hours that he worked in excess of 40 hours a week at all times.

42. Defendants' failure to pay Plaintiff minimum wage and, at all times, overtime, was a willful violation of the FLSA, 29 U.S.C. §§ 206 and 207a.

43. Pursuant to the FLSA, Plaintiff is owed payment of unpaid wages and overtime wages at the proper rate of pay for all hours and overtime worked plus an additional amount equal thereto in FLSA liquidated damages, attorney's fees and the costs and disbursements of this action.

## SECOND CLAIM
### (For Violation of the NYLL §§ 650 *et seq.*)

44. Plaintiff repeats paragraphs 1 through 43, inclusive, of this Complaint.

45. Defendants' failure to pay Plaintiff minimum wages and failure to pay overtime at the proper rate during all times of his employment was a willful violation of NYLL §§ 160(3), 198, 652 and N.Y.C.R.R. §142-2.2.

46. Pursuant to NYLL §§ 160(3), 191, 195, 198, 652 and N.Y.C.R.R. §142-2.2, Plaintiff is entitled to recovery of unpaid minimum wages and unpaid overtime at the proper rate for hours worked in excess of 40 hours a week, an additional amount equal to 100% thereof in liquidated damages pursuant to NYLL § 198, the penalties for the prejudgment interest, attorney's fees and costs and disbursements of this action.

## THIRD CLAIM
### (For Violation of NYLL § 195 Notice Requirement)

47. Plaintiff repeats paragraphs 1 through 46, inclusive, of this Complaint.

48. Defendants did not provide Plaintiff with a written notice of his wages as required by the WTPA, NYLL §195(1).

49. Defendants did not state the regular hourly rate and overtime rate of pay Plaintiff was to be paid for the period July 2014 through March 5, 2015.

50. Defendants did not state the overtime rate of pay Plaintiff was to be paid once Defendants withheld his wages beginning in or about in September 2015.

51. Defendants' failure to provide Plaintiff with a written notice of his wages was a violation of the NYLL §195, and accordingly Plaintiff is entitled to recover from Defendants penalties as provided by NYLL § 198(1)(b) and (d).

## FOURTH CLAIM
### (For Violation of NYLL § 195 Record Keeping Requirements)

52. Plaintiff repeats paragraphs 1 through 51 inclusive, of this Complaint.

53. During the period July 2014 through March 5, 2015, Defendants did not provide Plaintiff with a weekly statement concerning the hours worked or his rate of pay.

54. Upon information and belief, Defendants also failed to maintain true and accurate records of the numbers of hours Plaintiff worked during the period July 2014 through March 5, 2015, and failed to maintain a record of Plaintiff's hours once Defendants began withholding his wages in or about September 2015.

55. As a result of Defendants' failure to comply with the record keeping requirements of NYLL § 195, Plaintiff is entitled to recover from Defendants penalties as provided by NYLL § 198(1)(b) and (d).

## FIFTH CLAIM
### (Unlawful retaliation under FLSA)

56. Plaintiff repeats paragraphs 1 through 55 inclusive, of this Complaint.

57. Plaintiff made good faith complaints to Defendants that they failed to pay him wages and overtime wages, were improperly withholding his wages in violation of the FLSA, and had failed to provide him his health insurance benefits as contractually required in the Employment Agreement.

58. Plaintiff also made good faith complaints to Defendants about serious health and safety issues affecting the business and premises at Retro Fitness Manhattan.

59. Plaintiff's foregoing complaints constitute protected activity within the FLSA.

60. Defendants retaliated against Plaintiff by requiring him to work without pay, by failing to provide him with any relief from the affects the excessive work demands they had placed on him, and by ultimately terminating his employment in punishment and retaliation for those complaints.

61. Defendants' aforesaid retaliatory conduct violates 29 U.S.C. § 215(a)(3).

62. Pursuant to these provisions, Plaintiff is entitled to compensatory damages and other appropriate relief, including back pay, front pay, lost benefits, attorney's fees, costs and other disbursements, as provided by 29 U.S.C. § 215(a)(3) and determined by the Court.

## **SIXTH CLAIM**
**(Unlawful retaliation under NYLL)**

63. Plaintiff repeats paragraphs 1 through 62 inclusive, of this Complaint.

64. Plaintiff made good faith complaints to Defendants that they failed to pay him wages and overtime wages, were improperly withholding his wages in violation of the NYLL, and had failed to provide him his health insurance benefits as contractually required in the Employment Agreement.

65. Plaintiff also made good faith complaints to Defendants about serious health and safety issues affecting the business and premises at Retro Fitness Manhattan.

66. Plaintiff's foregoing complaints constitute protected activity within the NYLL.

67. Defendants retaliated against Plaintiff by requiring him to work without pay, by failing to provide him with any relief from the affects the excessive work demands they had

placed on him, and by ultimately terminating his employment in punishment and retaliation for those complaints.

68. Defendants' aforesaid retaliatory conduct violates NYLL § 215.

69. Pursuant to these provisions, Plaintiff is entitled to compensatory damages and other appropriate relief, including back pay, front pay, lost benefits, attorney's fees, costs and other disbursements as provided by NYLL § 215 and as may be determined by the Court.

## SEVENTH CLAIM
(Breach of Contract)

70. Plaintiff repeats paragraphs 1 through 69 inclusive, of this Complaint.

71. Pursuant to Employment Agreement, starting March 5, 2015, the date on which the Gym opened, Gear Fitness was contractually obligated to pay Plaintiff $100,000 per year "plus incentives and bonus package" and a health benefit package and other compensation and benefits as more fully set forth in the Employment Agreement, Exhibit A hereto.

72. Defendant Gear Fitness breached the Employment Agreement by failing to make such payments, including by failing to pay the incentives and bonuses specified, failing to provide health insurance and reducing Plaintiff's pay below the amount set for in the Employment Agreement.

73. Plaintiff has fully performed his obligations pursuant to the Employment Agreement.

74. Plaintiff has been damaged by Defendant Gear Fitness's breaches of the Employment Agreement in an amount to be determined at trial.

## EIGHTH CLAIM
(Quantum Meruit)

75. Plaintiff repeats paragraphs 1 through 74, inclusive, of this Complaint.

76. Defendants employed Plaintiff at least as early as July 2014 to be an employee, executive and manager of Defendants' Retro Fitness Manhattan, beginning with the planning, construction and marketing and pre-sale phases of the Gym (collectively "Pre-Opening Services").

77. For the period July 2014 until the formal commencement date of Plaintiff's Employment Agreement when the Gym opened on March 5, 2015, at Defendants' request, Plaintiff performed all of the work, labor and services that he was hired to perform and incurred other charges on Defendants' behalf for the Pre-Opening Services.

78. At all times relevant, Defendants specifically requested and knew that these Pre-Opening Services were being performed and other charges were being incurred on their behalf by Plaintiff, and that Plaintiff expected to be paid.

79. Defendants accepted the benefit of Plaintiff's aforesaid services without paying for them.

80. The fair and reasonable value of the services Plaintiff performed on Defendants' behalf in connection with the Pre-Opening Services and for which Plaintiff has not been compensated, together with related costs, expenses, and disbursements, is $370,000, none of which has been paid despite due demand.

81. Accordingly, Plaintiff is entitled to judgment against Defendants in the amount of $370,000, together with interest thereon.

### NINTH CLAIM
### (Unjust Enrichment)

82. Plaintiff repeats paragraphs 1 through 81, inclusive, of this Complaint.

83. Commencing in or about July 2014, and continuing thereafter, Plaintiff expended personal funds at Defendants' request for Pre-Opening Services. After the Gym opened in March 2015, Plaintiff expended additional personal funds to maintain the Gym with Defendants' knowledge or at Defendants' specific request.

84. Defendants benefited from the aforesaid expenditures undertaken by Plaintiff for Defendants' gym at Retro Fitness Manhattan. Defendants have failed and refused to pay Plaintiff for the aforesaid expenditures. Defendants have thereby obtained the benefit of Plaintiffs' expenditures so that in equity and good conscience, Defendants ought not to retain such benefits without compensating Plaintiff therefore. Defendants have thereby been unjustly enriched.

85. Plaintiff has been damaged by reason of Defendants' unjust enrichment and continued wrongful use of Plaintiff's materials and expenditures. Accordingly, Plaintiff is entitled to judgment against Defendants in the amount of $58,000, together with interest thereon.

## TENTH CLAIM
### (Promissory Estoppel)

86. Plaintiff repeats paragraphs 1 through 85, inclusive, of this Complaint.

87. As hereinabove alleged, Defendants promised Plaintiff that he would be paid for work labor and services and expenses which he undertook prior to the opening of the Gym in March 2015, and that thereafter he would be paid the regular salary provided for in the Employment Agreement.

88. As hereinabove alleged, Plaintiff reasonably relied on Defendants' promises.

89. Plaintiff was injured by his reliance on Defendants' promises in that he undertook and provided substantial work labor and services and paid expenses for the benefit of Defendants.

90. But for Defendants' promises, Plaintiff would not have undertaken and provided the substantial work, labor and services and paid expenses for the benefit of Defendants.

91. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands Judgment in his favor and against Defendants for:

    A.    compensatory damages in an amount of minimum wages for the hours worked in the period June 2014 to March 2015 plus one and one half times his hourly rate of pay for all hours he worked overtime;

    B.    compensatory damages equal to one and one half times his hourly rate of pay for all hours he worked overtime after March 2015;

    C.    an amount equal to the sum of (A) and (B) above as liquidated damages as provided in 29 U.S.C.A. § 216(B);

    D.    an amount equal to the sum of (A) and (B) as liquidated damages as provided in NYLL § 198, and 12 NYCRR 142-2.2;

    E.    compensatory damages for breach of the employment Contract;

    F.    compensatory damages for the claims in quantum meruit, unjust enrichment and promissory estoppel

    G.    compensatory damages for physical injuries and emotional distress suffered by Plaintiff by reason of Defendants' aforesaid wrongful conduct;

    H.    punitive damages of at least three times the compensatory damages on the common law claims;

    I.    prejudgment interest on the New York Law amounts;

    J.    attorneys' fees and costs and disbursements of this action;

K. attorneys' fees and costs incurred in enforcing the Judgment as to the New York State claim pursuant to NYLL § 198 paragraph 4;

L. a fifteen (15%) percent increase in the amount of the Judgment as to the New York State claim if any amounts remain unpaid upon the expiration of ninety (90) days following the time to appeal the Judgment if no appeal is then pending pursuant to NYLL §198 paragraph 4;

M. Compensatory damages including front pay, back pay, and lost benefits; and

N. such other and further relief as this Court deems necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this action.

Dated: New York, New York
March 24, 2017

SCHWARTZ & THOMASHOWER LLP

By: _____
Rachel Schwartz
William Thomashower
15 Maiden Lane, Suite 705
New York, NY 10038-5120
rschwartz@stllplaw.com
wthomashower@stllplaw.com
Tel. 212-227-4300

*Attorneys for Plaintiff*
BEN BONAVENTURA