UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BEN BONAVENTURA,

               Plaintiff,

- against -

GEAR FITNESS ONE NY PLAZA LLC., GEAR
FITNESS HOLDINGS LLC, RETROFITNESS,
LLC, MEDISPA ONE NY PLAZA LLC, and
RICHARD SANSARICQ,

               Defendants.

**OPINION AND ORDER**

17 Civ. 2168 (ER)

Ramos, D.J.:

On March 24, 2017, Ben Bonaventura ("Bonaventura" or "Plaintiff") brought this suit alleging ten causes of action against Gear Fitness One NY Plaza LLC, Gear Fitness Holdings LLC, Retrofitness, LLC, Medispa One NY Plaza LLC, and Richard Sansaricq (collectively, "Defendants"). *See* Compl. (Doc. 1). The Complaint alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, New York Labor Law ("NYLL"), § 190 *et seq.*, and common law claims for breach of contract, unjust enrichment, quantum meruit, and promissory estoppel. *Id.* On June 7, 2017, Defendant Retrofitness, LLC ("Retrofitness") moved to dismiss the Complaint. *See* Doc. 35. For the reasons stated below, the motion is GRANTED in part and DENIED in part.

I.     BACKGROUND[1]

Retrofitness is an operator and franchisor of gyms and fitness clubs nationwide. Compl. ¶ 18. Retrofitness currently earns income from 140 gyms and fitness clubs, and has been in

---

[1] The following facts are based on the allegations in the Complaint, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

operation since 2004. *Id.* In February 2013, Richard Sansaricq ("Sansaricq") and Retrofitness entered into a franchise and trademark license agreement in order to open a fitness club and medical spa at One New York Plaza in Manhattan (the "Manhattan Gym"). *Id.* ¶ 19. Retrofitness selected the location, the architect, the design team, and was "substantially involved" in the marketing for the Manhattan Gym. *Id.* ¶ 20. Retrofitness was also "directly and actively involved" in the gym's day-to-day operations, including by making personnel decisions (like hiring, firing, and setting compensation), auditing the franchise, and supervising employee activities. *Id.* ¶¶ 13, 20. In addition, Retrofitness required "regular written reports [from the franchise] and maintenance of the Retro Fitness brand standards." *Id.* ¶ 20.[2]

In May or June 2014, Bonaventura and Sansaricq began discussing employment opportunities at the Manhattan Gym. *Id.* ¶ 21. On July 11, 2014, Sansaricq and executives at Retrofitness interviewed Bonaventura for the position of General Manager/Director of Physical Therapy and Personal Training. *Id.* Thereafter, Bonaventura was hired with the approval of Retrofitness and on July 28, 2014, signed an employment contract with Sansaricq. *Id.* Ex. A. The contract provided for Bonaventura to earn $100,000 per year. *Id.* Bonaventura's employment was contingent on the completion of forty hours of training at "Retro Fitness University." *Id.* The contract did not specify Bonaventura's official start date, but merely stated that it would be "at the opening of [the Manhattan Gym]." *Id.* Bonaventura was given an employee handbook and was informed that the handbook contained Retrofitness' policies and procedures, which governed the terms and conditions of his employment. *Id.* ¶ 23. However,

---

[2] When the Manhattan Gym opened in March 2015, executives from Retrofitness held a three day training with the staff at the gym to review Retrofitness' policies and procedures, dress code, and other terms and conditions of employment. *Id.* ¶ 23.

Bonaventura was not given any W-2 or W-4 forms, pay rate acknowledgment forms, or wage verification forms. *Id.* ¶ 28.

Although the Manhattan Gym was scheduled to open in October 2014, it did not open until March 5, 2015, and the medical spa did not open until September 2015. *Id.* ¶ 26. Between July 2014 and March 2015, Bonaventura performed a significant amount of work there. *Id.* Bonaventura worked with Sansaricq and Matthew Schultz, Vice President of Franchise Operations for Retrofitness, to redesign the physical layout of the Manhattan Gym. *Id.* During this time, Bonaventura designed the layout for training areas, prepared and planned group exercise classes, and, with Sansaricq's approval, hired additional personal trainers. *Id.* Bonaventura also attended site visits and coordinated with the architects involved in the project. *Id.* To perform these tasks, Bonaventura often used his own funds, but was not reimbursed by Defendants. *Id.* ¶ 30.[3] In fact, Bonaventura was not paid at all during this nine month period. *Id.* ¶ 27. He also did not receive any records of the hours he worked. *Id.* ¶ 29.

It appears that after the Manhattan Gym opened on March 5, 2015, Bonaventura was paid his full salary from the date of the opening until approximately September 30, 2015. *See id.* ¶ 31, 33. At that time, Defendants began to withhold at least some of Bonaventura's wages on the basis that they did not have sufficient funds to pay his full salary. *Id.* ¶ 33. Bonaventura does not state who told him this. *Id.*

Throughout the entirety of his employment, Bonaventura regularly worked more than forty hours per week—in some weeks, he worked more than one hundred hours. *Id.* ¶ 31.[4]

---

[3] By the time he left Defendants' employ in June 2016, Bonaventura had spent $58,000 on equipment and supplies for the Manhattan Gym, none of which had been reimbursed. *Id.* ¶ 30.

[4] Bonaventura alleges that these long hours caused him to suffer physical symptoms, including elevated blood pressure, migraines, bleeding ulcers, physical tension, and anxiety-related insomnia. *Id.* ¶ 36.

3

Despite this, Bonaventura was never paid overtime.  *Id.*  Bonaventura complained frequently to Sansaricq about the wages that were being withheld, his long hours, and the requirement that he perform tasks outside of his job description.  *Id.* ¶ 34.  Bonaventura also complained about the ventilation system, which he alleges was not compliant with NYC Building Code standards and which "adversely affected" the health of the Manhattan Gym's clients and employees.  *Id.* ¶ 35.  In response, Sansaricq told Bonaventura to fix the ventilation equipment himself and subsequently paid a third party vendor to certify (falsely, according to Plaintiff) that the ventilation system was in compliance with applicable regulations.  *Id.*

On June 2, 2016, Defendants terminated Bonaventura's employment; according to Bonaventura, the termination was "in retaliation for his complaints."  *Id.* ¶ 37.  On March 24, 2017, Bonaventura filed the instant lawsuit.  *See* Compl. (Doc. 1).  Bonaventura brings ten causes of action:  failure to pay minimum wage and overtime under the FLSA and NYLL (Claims 1 and 2), failure to provide written notice of wages under the NYLL (Claim 3), failure to provide a weekly statement of hours worked and rate of pay under the NYLL (Claim 4), unlawful retaliation under the FLSA and NYLL (Claims 5 and 6), breach of contract (Claim 7), quantum meruit (Claim 8), unjust enrichment (Claim 9), and promissory estoppel (Claim 10).

## II.  LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must only consider the complaint, including "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Ocampo v. 455 Hosp. LLC*, No. 14 Civ. 9614 (KMK), 2016 WL 4926204, at *3 (S.D.N.Y. Sept. 15, 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  The Court may also "consider a document 'where the complaint relies heavily upon its terms and effect, which renders the document integral to the

4

complaint." *Id.* at *3 (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal punctuation marks omitted).

The Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570)).

## III. DISCUSSION

### A. Whether Bonaventura Alleged Retrofitness Was His Employer

Retrofitness alleges that because it is only a franchisor of the Manhattan Gym, it was not Bonaventura's "employer," and therefore, any FLSA claims must be dismissed against it. *See* Memorandum of Law in Support of Retrofitness' Motion to Dismiss ("Def.'s Mem.") (Doc. 35-1), at 3. Under the FLSA, an employer is "one who . . . permits an employee to work." *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 258 (S.D.N.Y. 2012) (quoting 29 U.S.C. § 203(g) (internal

quotation and punctuation marks omitted)). The FLSA "expressly recognize[s] that a worker may be employed by more than one entity at the same time." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) (citing 29 C.F.R. § 791.2). Even where one entity exerts ultimate control over a worker, another entity may still exert a sufficient amount of control over the employee to qualify it as a joint employer under the FLSA. *Cano*, 287 F.R.D. at 258 (quoting *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 121 (S.D.N.Y. 2011)).

The Second Circuit has not squarely addressed whether a franchisor of an independently owned franchise may be the "employer" of a franchise employee for purposes of FLSA liability. *Id*. at 259. In the absence of clear guidance, courts in this Circuit use the general "economic reality" test that the Second Circuit developed to determine whether an employer-employee relationship exists. *E.g., id.*; *Olvera v. Bareburger Group LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014). Under this test, courts consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Carter v. Dutchess Cmty Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).[5] While meeting these four factors "'can be *sufficient* to establish employ[ment] status, . . . 'a positive finding on those four factors is [not] *necessary* to establish an employment relationship.'" *Cano*, 287 F.R.D. at 258 (quoting *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)). "[C]ontrol is the key factor in determining, under the economic reality analysis, whether an entity or person qualifies as an employer." *Olvera*, 73 F. Supp. 3d at 206.

---

[5] This is referred to as the "economic reality" or "formal control" test. *Olvera*, 73 F. Supp. 3d at 205.

Retrofitness argues that Plaintiff has failed to plead sufficient supporting facts to satisfy the economic reality test. *See* Def.'s Mem. at 4. As discussed below, however, the Court finds that Plaintiff has alleged sufficient facts at this juncture to support the inference that Retrofitness exercised enough control over Plaintiff's employment to qualify it as an employer under the FLSA.

### 1. Power To Hire And Fire

Bonaventura alleges that Retrofitness executives interviewed him for the position along with Sansaricq and that the decision to hire him was subject to Retrofitness' approval. Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Mem.") (Doc. 48), at 8 (citing Compl. ¶¶ 13, 21).[6] He further alleges that Retrofitness was involved in his termination. Compl. ¶¶ 13, 37. Plaintiff also claims that Retrofitness and Sansaricq jointly decided whether or not to hire or fire other employees. *Id.* ¶ 13. Bonaventura here has plead substantially similar facts as the ones in *Olvera* and *Cano*, where courts in this district found that the plaintiffs satisfied this element by pleading that the franchisors were involved in implementing hiring policies and/or directing hiring and firing decisions. *See Cano*, 287 F.R.D. at 260; *Olvera*, 73 F. Supp. 3d at 307. Therefore, because the Complaint contains sufficient factual allegations to support the inference that Retrofitness maintained the authority to influence employment decisions, this factor of the economic reality test weighs in favor of finding that Retrofitness was Plaintiff's employer under the FLSA.

---

[6] Plaintiff also points to additional facts alleged in a declaration he submitted in support of his opposition. However, the Complaint does not mention those facts, and does not incorporate or rely on Bonaventura's affidavit (nor could it—Bonaventura's affidavit was only drafted on August 1, 2017, while the Complaint was filed on March 24, 2017). *See* Compl. (Doc. 1); Doc. 49. Because these additional allegations were not contained in the Complaint, they may not be taken into account when deciding the motion to dismiss and the Court will disregard them. *See Ocampo*, 2016 WL 4926204, at *3.

### 2. Supervision and Control

The second element of the economic reality test—whether Retrofitness "supervised and controlled employee work schedules or conditions of employment"—has also been met. *See Herman*, 172 F.3d at 139 (setting forth the second element of the economic reality test). Plaintiff claims that Retrofitness, in conjunction with Sansaricq, supervised his daily activities and that at the time he was hired, he was provided with an employee handbook that contained Retrofitness' policies and procedures, which governed the terms and conditions of his employment. Compl. ¶¶ 13, 23. Bonaventura also alleges that Retrofitness was "directly and actively involved in [the gym's] day-to-day operations." *Id.* ¶ 20. Specifically, Retrofitness audited the gym and required regular written reports as well as the maintenance of the Retro Fitness brand standards. *Id.* In addition, after the gym opened for business, executives from Retrofitness led a three day training at the gym to orient the staff on Retrofitness' policies, procedures, dress codes, and other terms and conditions of employment. *Id.* ¶ 23.

In *Olvera*, the court found that the plaintiff satisfied this factor of the economic reality test by pleading, as Plaintiff does here, that the franchisor "set and enforced requirements for the operation of franchises" and "monitored employee performance." *Olvera*, 73 F. Supp. 3d at 207 (internal quotation marks omitted). There is some indication by Plaintiff that Retrofitness had the power to enforce its policies and procedures on employees at the gym. Although the Complaint does not mention what, if any, adverse consequences Sansaricq would face if the gym did not submit regular written reports to Retrofitness, or if brand standards were not adequately maintained at the gym, these requirements show that Retrofitness exercised some degree of control over the employees at the gym.

Similarly, in *Ocampo v. 455 Hospitality LLC*, the court found that dismissal was not appropriate where the plaintiff alleged that the franchisor set policies for the franchises, maintained the right to inspect the premises at any time, regularly inspected and audited franchises, required the use of a particular business software, had the power to punish poor performance, and retained the right to "make changes" to the manner in which the franchise was operated. *Ocampo*, 2016 WL 4926204, at *6–7.[7] Despite the Complaint's silence as to whether Retrofitness controlled employee work schedules at the gym, the allegations as a whole are sufficient to support an inference that Retrofitness exercised some degree of supervision and control over employees of the Manhattan Gym.

### 3. Payment and Employment Records

The final two prongs of the economic reality test ask whether the entity determined the rate and method of payment and whether it kept employment records for the franchise employees. The Complaint asserts that Retrofitness was "actively and directly involved . . . [in] compensation determination." *See* Compl. ¶ 20. At this stage, such an allegation satisfies the third prong of the economic reality test. *See Cano*, 287 F.R.D. at 260 (noting that the plaintiff's allegations included that the franchisor "promulgated" and "implemented" compensation policies); *Olvera*, 73 F. Supp. 3d at 207 (denying dismissal where the plaintiff alleged that the franchisor determined wages and compensation).

With respect to the fourth factor, the Complaint asserts only that the Manhattan Gym failed to keep adequate employment records. Compl. ¶¶ 28–29. Bonaventura makes no

---

[7] *Ocampo* assessed whether the franchisor was an employer within the meaning of the FLSA under a different standard, using a "functional control" test rather than a "formal control" test. *Id.* ("[T]he Second Circuit has identified a number of factors pertinent to determining whether a person or entity, even if lacking formal control, exercised 'functional control' over an employee."). Because neither party argues that the functional control test should be used here, the Court does not address it. Under both tests, though, courts assess "the degree to which the alleged employers or their agents supervised [the] plaintiffs' work." *Id.*

9

allegations that Retrofitness required the gym to keep certain employee records or to implement specific systems for tracking payroll, hours, and/or wages. However, this factor "is a relatively minor consideration, and can be overcome by a more robust showing with respect to the other criteria." *Downes v. J.P. Morgan Chase & Co.*, 03 Civ. 8991 (GEL) (MHD), 2006 WL 785278, at * 20 (S.D.N.Y. Mar. 21, 2006), *report and recommendation adopted by* 2006 WL 1233939 (S.D.N.Y. May 8, 2006). Since Plaintiff plead robust factual allegations concerning the first, second, and third prongs of the economic reality test, Bonaventura's failure to satisfy the fourth prong of the test is not determinative, and the Court finds that Bonaventura has made sufficient allegations with respect to Retrofitness to make his claims against it "plausible." *See Iqbal*, 556 U.S. at 678 (finding that dismissal is inappropriate when a complaint states a claim for relief "that is plausible on its face") (quoting *Twombly*, 550 U.S. at 570)).

### B. Whether Plaintiff Was An Exempt Employee

Retrofitness also argues that, whether or not it was Bonaventura's employer, Bonaventura is outside the protections of the FLSA because he was an exempt employee. *See* Def.'s Mem. at 7. Bonaventura responds that, at this early stage, Retrofitness has not established that Bonaventura was actually sufficiently compensated to meet the salary requirement of the rule. *See* Pl.'s Mem. at 11.

Employees are exempt from FLSA's minimum wage and overtime provisions "if they are employed in a bona fide executive capacity." *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013) (citing 29 U.S.C. § 213(a)(1) (internal quotation marks omitted)). An executive employee is one:

> (1) [who is c]ompensated on a salary basis at a rate of not less than $455 per week; (2) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department of subdivision thereof; (3) [w]ho customarily and regularly directs the work of two or more other employees; and (4) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

*Martinez*, 930 F. Supp. 2d at 520 (quoting 29 C.F.R. § 541.100(a)). The test for determining "whether an employee is exempt from the overtime requirements of the FLSA is a highly fact intensive inquiry that must be made on a case-by-case basis in light of the totality of the circumstances." *Scott v. SSP America, Inc.*, No. 09 Civ. 4299 (RRM), 2011 WL 1204406, at *6 (E.D.N.Y. Mar. 29, 2011) (internal quotations omitted).

The employer has the burden of proving that the exemption applies and FLSA exemptions are narrowly construed against the employer. *Martinez*, 930 F. Supp. at 519–20. The exemption is an affirmative defense that may only form the basis for a Rule 12(b)(6) dismissal if it "appears on the face of the complaint." *Gomez v. Dynaserv Indus., Inc.,* No. 15 Civ. 3452 (SJ) (PK), 2016 WL 6072371, at *1 (E.D.N.Y. Oct. 17, 2016) (quoting *Pani v. Blue Cross Blue Shield*, 15 F.3d 67, 74 (2d Cir. 1998)).

Bonaventura argues that he cannot be considered a "bona fide executive" because he "was not a salaried employee throughout his entire employment with Retrofitness." Pl.'s Mem. at 11. Specifically, Bonaventura argues that while his salary was *supposed* to be $100,000 annually (which neither party disputes would exceed the salary floor for the executive exemption), he was not paid at all for the first nine months of his employment. *Id.* at 12 (citing Compl. ¶ 27). Bonaventura's salary was also withheld, at least in part, between September and December 2015. *Id.* (citing Compl. ¶ 33).

11

To satisfy the salary basis requirement, an employee must "regularly receive[] each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation." *See* 29 C.F.R. § 541.602(a). Subject to a few allowable deductions, an employee must "receive the full salary for any week in which the employee perform[ed] any work . . . ." *Id.* But Bonaventura has alleged that for most of the months he was employed, he received far less than his full salary. *See* Compl. ¶¶ 27, 33; *see also Harvey v. Homebound Mortg., Inc.*, 547 F.3d 158, 164 (2d Cir. 2008) ("[O]nce the fixed minimum portion of an employee's compensation has been determined, any reduction below that set amount would, in most circumstances, violate the 'salary-basis test.'"). He alleges, in other words, that he did not "regularly receive" a predetermined compensation, and did not receive his full salary for the weeks he worked. He also argues that because nonpayment or underpayment was not irregular, but rather occurred as a matter of course, Retrofitness' behavior demonstrates that it did not intend to pay Bonaventura on a salaried basis. *See* 29 C.F.R. § 541.603(a) ("An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis.").

Retrofitness does not argue that any Defendants made proper deductions to Plaintiff's salary under Section 541.602(b) of the Department of Labor's regulations. Instead, it argues that the wages withheld from Bonaventura do not make him un-salaried, because "the object of the [deductions] inquiry is to determine 'whether the employer's practices reflect an objective intention to pay its employees on a salaried basis.'" Reply Memorandum of Law in Support of Defendant's Motion to Dismiss ("Reply Mem.") (Doc. 50), at 7 (quoting *Shafir v. Continuum Health Care Partners, Inc.*, No. 12 Civ. 5794 (KBF), 2016 WL 205435, at *4 (S.D.N.Y. Jan. 15, 2016) (citations omitted)). Retrofitness argues that Defendants' practice of withholding

12

Plaintiff's salary does not show an intent to pay Bonaventura hourly rather than on a salaried basis. *Id.*

It is possible that with the benefit of discovery, it will become clear that Retrofitness' objective intent was to pay Bonaventura on a salaried basis. But the burden is on Retrofitness to show that the salary requirement has been met. The Complaint contains allegations sufficient to infer that Retrofitness underpaid Bonaventura so significantly that the executive exemption does not apply. At this stage, then, the Court DENIES Retrofitness' motion to dismiss Bonaventura's FLSA and NYLL claims.[8]

## C. Quantum Meruit and Unjust Enrichment

Next, Retrofitness argues that Bonaventura cannot state a claim against it for quantum meruit or unjust enrichment, because Retrofitness has neither "accept[ed] Plaintiff's services," nor "obtain[ed] a benefit from Plaintiff's alleged actions." Def.'s Mem. at 9.

Under New York law, quantum meruit and unjust enrichment are analyzed together as a single quasi contract claim. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). To state a claim, a plaintiff must allege: "(1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services." *Id.* Bonaventura alleges that Defendants have accepted two kinds of services for

---

[8] Because the Court determines that Retrofitness' motion should be denied on the basis of the salary requirement, it does not consider whether Bonaventura's duties would have otherwise made him exempt under the FLSA and NYLL. On reply, Retrofitness also argues—seemingly for the first time—that Bonaventura is also exempt under the NYLL's professional exemption, which has no salary requirement. *See* Reply Mem. at 6 (quoting *Shafir*, 2016 WL 205435, at *5). A "professional," within the meaning of the NYLL, is one whose position requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from . . . training in the performance of routine mental, manual, or physical processes." *See* 12 N.Y. Admin. Code § 142-2.14(c)(4)(iii)(a). Retrofitness does not even attempt to show how Bonaventura's job as general manager and director of physical therapy and personal training at the Manhattan Gym falls within the ambit of the professional exemption, and the Court therefore denies Retrofitness' motion on that basis as well.

which he had a reasonable expectation of compensation: first, his work without pay for the period before his contractual start date, between July 2014 and March 2015; and second, his out-of-pocket expenditures for the gym, at Defendants' request or with their knowledge. *See* Compl. ¶¶ 77–80, 83–85.

Retrofitness argues that these allegations are insufficient because Bonaventura has not alleged that Retrofitness was responsible for withholding Bonaventura's salary.[9] Def.'s Mem. at 9. In support of this argument, Retrofitness points to *Singh v. 7-Eleven*, a case from the Northern District of California that granted summary judgment to a franchisor under the FLSA. *See Singh*, No. 05 Civ. 4534 (RMW), 2007 WL 715488 (N.D. Cal. Mar. 8, 2007). Separate and apart from the fact that *Singh* was decided on summary judgment and therefore with the benefit of a full factual record, the Court finds the case is inapposite. The court in *Singh* determined that 7-Eleven was not the plaintiffs' employer under the FLSA or the California Labor Code; it did not consider any claims for quantum meruit, much less any claims governed by New York law. *Id.*

To the extent that Retrofitness relies on *Singh* to support its argument that a franchisor is not an "employer" of a franchise employee if it does not sufficiently control the employee's day-to-day operations, Retrofitness has not shown that a plaintiff must allege a formal employment relationship to plead a quasi-contractual claim.[10] *See Derewiecka v. Zlored, Inc.*, No. 96 Civ. 3382 (WHP), 1999 WL 767203, at *2 (S.D.N.Y. Sept. 28, 1999) (determining that a contractual relationship between the parties is not necessary as a matter of law for a quantum meruit claim). The Court finds here that Bonaventura has sufficiently alleged that he worked at the Manhattan

---

[9] Retrofitness also makes numerous allegations about the financial relationship between it and its franchises. Because Retrofitness has moved to dismiss, those factual allegations, which are not found within the four corners of the Complaint, will not be considered. *See* note 6 *supra*.

[10] And, as discussed in Part III.A *supra*, the Court finds that Bonaventura has sufficiently alleged an employment relationship between Retrofitness and himself.

Gym for nine months, under the direction of all Defendants, during which he expected to be paid but was not. *See* Compl. ¶¶ 26–27. Bonaventura has also alleged that he used personal funds to purchase business supplies and equipment, which he alleges was done at the request, or with the knowledge, of Defendants. *Id.* ¶¶ 30, 83–84. The Court therefore finds that Bonaventura has stated a claim for quantum meruit/unjust enrichment, and DENIES Retrofitness' motion to dismiss these claims.

### D. Promissory Estoppel

Finally, Retrofitness argues that Bonaventura's claim for promissory estoppel must be dismissed against it. The elements of promissory estoppel are: "(1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance." *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 32 (1st Dep't 2015) (internal quotations omitted).

Retrofitness challenges only the first element, arguing that "Plaintiff fails to claim that Retrofitness made any statement to Plaintiff . . . promising compensation for work allegedly completed at the franchise location." Def.'s Mem. at 10. Bonaventura alleges that when he was hired, "Defendants promised [him] that he would be paid for work . . . which he undertook prior to the opening of the Gym in March 2015, and thereafter he would be paid the regular salary provided for in the Employment Agreement." Compl. ¶ 87. But the Complaint lacks any specificity about who made this promise to Bonaventura, when it was made, and to what extent Retrofitness executives were involved. Without more, this statement offers no more than a "threadbare recital" of the first element for promissory estoppel, and has not "nudged [Bonaventura's] claims across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680

15

(quoting *Twombly*, 550 U.S. at 570). Therefore, the Court GRANTS Retrofitness' motion to dismiss Bonaventura's claim for promissory estoppel without prejudice.

## IV. CONCLUSION

Retrofitness' motion to dismiss is DENIED in part and GRANTED in part. Specifically, the Court grants dismissal without prejudice of Plaintiff's promissory estoppel claim against Retrofitness, and denies dismissal in all other respects. The parties are directed to appear for a status conference on April 25, 2018 at 12:00 p.m. The Clerk of Court is respectfully directed to terminate the motion (Doc. 35).

It is SO ORDERED.

Dated: March 28, 2018
        New York, New York

                                              Edgardo Ramos, U.S.D.J.